# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

DWAYNE JACKSON,

      **Plaintiff,**

  v.

COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**

Case No. 2:19-cv-4712

Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

      Plaintiff, Dwayne Jackson, brings this action under 42 U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for social security disability insurance and supplemental insurance benefits. With the consent of the parties pursuant to 28 U.S.C. § 636(c) (ECF No. 6), this matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 9) the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), and the administrative record (ECF No. 8). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

      Plaintiff filed his applications for disability benefits on March 4, 2016 and for supplemental security income on August 18, 2016, alleging that he has been disabled since July 23, 2015. (R. at 169-74; 178-79.) Plaintiff alleges disability from multiple sclerosis. Plaintiff's applications were denied initially and upon reconsideration. (R. at 98-104; 106-112.) Plaintiff sought a *de novo* hearing before an administrative law judge.

1

Administrative Law Judge Nicki Hall ("ALJ") held a video hearing on July 24, 2018, at which Plaintiff, represented by counsel, appeared and testified. (R. at 29-70.) On September 26, 26, 2018, the ALJ issued a decision finding that the Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 10-19.) The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1-6.) Plaintiff then timely commenced the instant action. (ECF No. 1.)

## II. THE ADMINISTRATIVE HEARING

Plaintiff testified that, at the time of the hearing, he was 49 years old. (R. at 41.) He lived in a mobile home with his girlfriend which required him to take three steps to get inside. (R. at 42). He indicated that he was right hand dominant. (*Id*.) Plaintiff stated that he drove locally and to his mother's house about two miles away daily. (R. at 43.) He indicated that he left school during the eleventh grade. (R. at 43.) He testified regarding his past work experience driving heavy equipment. (R. at 45-47.) When questioned by his Attorney, Plaintiff related that he could walk about a half hour before his right leg became a problem with his muscles getting sore and tense. (R. at 48-49.) Plaintiff stated that he did not try to return to work after being laid off as he had no feeling in his right hand and his leg was weak. (R. at 47.) He represented that he believed he should use a cane, but had difficulty holding it with his right hand. (R. at 49.) He testified that he used his left side for driving, had difficulty buttoning clothes and could not cut his food by himself. (R. at 51, 52.) Plaintiff indicated that he has dull aches every day. (R. at 55.)

Plaintiff clarified that, although one of his doctors noted that he had gone deer hunting, he only watched the deer from his blind on his property about 150 yards from the house. (R. at

56.) He said that he was too shaky to fire a gun and that the last time he shot a deer was probably six years earlier. (*Id*.)

The ALJ asked Plaintiff when he began experiencing the symptoms with his right hand to which he replied that it was probably during the last year he worked. (R. at 58.) He stated that he could not work the bulldozer and his employer put him on a rock truck. (*Id*.) Plaintiff indicated it became worse to the point he could not do buttons two years prior to the hearing. (*Id*.)

Vocational Expert ("VE") Larry Bell also appeared and testified. The VE indicated that Plaintiff's past work as a bulldozer operator was heavy and skilled. The ALJ posed the first hypothetical question as follows, which ultimately she adopted as Plaintiff's residual fuctional capacity:

> Let's assume a hypothetical individual the same age, education and work background as the claimant, who's capable of performing work at the medium level as defined in the regulations. All posturals are frequently except unlimited stooping but never climb ladders, ropes or scaffolds. Work should not require greater than frequent use of the right upper extremity for pushing and/or pulling and should not require greater than frequent use of the right lower extremity for the operation of foot controls.
>
> Work should not require greater than occasional exposure to concentrated levels of extreme vibration and work should not require exposure to hazards, such as unprotected heights or dangerous unshielded moving mechanical parts.

(R. at 60.) In response, the VE indicated that such a person could not perform Plaintiff's past work but could perform jobs as a food service worker, kitchen helper, or laundry worker, which existed in significant numbers in the economy. (R. at 61.)

3

### III. THE ADMINISTRATIVE DECISION

On September 26, 2018, the ALJ issued her decision. (R. at 10.) The ALJ found that Plaintiff met the insured status requirements through December 31, 2020. (R. at 12.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantially gainful activity since her alleged onset date of July 23, 2015. (*Id*.)

The ALJ found that Plaintiff had the severe impairments of multiple sclerosis and spastic hemiplegia affecting right dominant side. (R. at 12.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.) At step four of the sequential evaluation process, the ALJ found that Plaintiff had the following residual functional capacity ("RFC") to perform the following:

> [M]edium work . . . except [Plaintiff] can perform all postural movements frequently, except unlimited stooping and never climb ladders, ropes or scaffolds. Work should not require greater than frequent use of the right upper extremity for

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

>pushing and/or pulling, and should not require greater than frequent use of the right lower extremity for operations of foot ocntrols. Work should not require greater than occasional exposure to concentrated levels of extreme vibration. Work should not require exposure to hazards such as unprotected heights, or dangerous unshielded moving mechanical parts.

(R. at 14.)

The ALJ determined that Plaintiff is unable to perform his past work. (R. at 17.) She also found that Plaintiff was 46 years old at the alleged onset date "which is defined as a younger individual age 18-49." (R. at 18.) She noted that Plaintiff has a limited education and is able to communicate in English. (*Id*.) The ALJ, relying on the VE's testimony, then determined that Plaintiff could perform the requirements at the medium exertional level, such as food service worker, kitchen helper, and laundry worker, all of which VE identified as existing in significant numbers in the regional and national economies. (R. at 18-19.) The ALJ, therefore, concluded that Plaintiff is not disabled under the Social Security Act. (R. at 19.)

### IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

Plaintiff puts forward two assignments of error. Plaintiff contends that the ALJ failed to properly evaluate the evidence by failing to consider the episodic nature of Plaintiff's Multiple Sclerosis and "failed to meet her burden at Step Five of the Sequential Evaluation." (Pl's Brief at p. 1.) The Court addresses each issue in turn.

**A. The ALJ's Analysis the Evidence Regarding Plaintiff's Multiple Sclerosis**

Plaintiff contends that the ALJ failed to properly evaluate the episodic nature of his Multiple Sclerosis ("MS"). In particular, Plaintiff asserts that the ALJ did not consider his relapses and exacerbations or address various abnormal findings indicated by his treating physician, Mohamed Al Jaberi, M.D., when evaluating his MS. He faults the ALJ for instead focusing on an examination by consultative examiner Khalid Darr, M.D., in June 2016, and a

review by state agency reviewing physician Michael Hallet, M.D., in July 2016. (Pl's Brief at pp. 10-13.)

As the Court of Appeals for the Sixth Circuit has found, "Multiple Sclerosis is an incurable, progressive disease subject to such periods of remission and exacerbation." *Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981). While MS "is a progressive disease for which there is no cure," it is not per se disabling. *Jones v. Sec'y of HHS*, No. 93-1958, 1994 WL 468033, at *3 (6th Cir. Aug. 29, 1994) (citations omitted). When evaluating MS, "consideration should be given to the frequency and duration of the exacerbations, the length of the remissions, and the evidence of any permanent disabilities." *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). With these standards in mind, the Court concludes that the ALJ thoroughly considered the medical evidence relating to Plaintiff's MS, accommodated his limitations related to his right-sided symptoms of relapse or exacerbations in the RFC, and that substantial evidence supports the conclusions.

Plaintiff's assertion that the ALJ failed to consider the episodic nature of his MS is not borne out in the decision. To the contrary, the ALJ exhaustively discussed the record evidence and provided sound explanations, supported by substantial evidence, in evaluating the limiting effects of Plaintiff's MS. By way of example, the ALJ considered that prior to the date Plaintiff alleged his disability began, his MS was stable, and he was working on a full-time basis. (R. at 13; 189, 273.) The ALJ noted that in June of 2015, Plaintiff went to a new examiner for complaints of left shoulder pain and right hip pain during the past month, which Plaintiff indicated felt different than his regular achy pain from MS. (R. at 253.) X-rays were ordered, and Plaintiff was advised to use ibuprofen. (R. at 254.)

The ALJ reviewed and discussed the records from Plaintiff's treating physician Dr. Jaberi when he followed-up for MS in November 2015. (R. at 14; 268.) The ALJ acknowledged that Dr. Jaberi had been treating Plaintiff for 11 years. (*Id*.) Dr. Jaberi noted that "over the past three years, [Plaintiff] has been stable clinically and radiologically." (*Id*.) Dr. Jaberi noted that Plaintiff's main problem was right hemiparesis (weakness) and increased tone of the lower limbs, especially on the right. (*Id*.) As of the date of this visit, however, Plaintiff was independent with ambulation and with his daily activities, had no other symptoms whether visual or oculobulbar, and no paresthesis. (R. at 14; 268). After considering all of this information, the ALJ noted that Dr. Jaberi wrote that Plaintiff had "lost his job again," indicating "[t]hey have downsized and he is unable to find another job." (*Id*.) In considering and discussing Dr. Jaberi's entry, the ALJ found that Plaintiff's lack of success in securing employment, however, did not lead to the conclusion that he was disabled. (R. at 14.) This determination is supported by substantial evidence. *See* 20 C.F.R. § 404.1566(c) ("We will determine that you are not disabled if your [RFC] and vocational abilities make it possible for you to do work which exists in the national economy, but you remain unemployed because of—(1) Your inability to get work; (2) Lack of work in your local area; . . . (6) No job openings for you[.]").

In evaluating the limiting effects of Plaintiff's MS, the ALJ reviewed and discussed an MRI taken of Plaintiff's brain on June 11, 2016, to determine whether the disease had progressed. The ALJ noted that the results showed no abnormal enhancement to suggest active demyelination. (R. at 15; 357.) The ALJ also took note that five days later, on June 16, 2016, Plaintiff presented for a consultative examination with Dr. Darr. (R. at 15; 284-92.) Noting the results on examination, Plaintiff had normal 5/5 grip strength bilaterally, and was able to write and pick up coins with either hand without difficulty. (R. at 15; 286.) His muscle strength was

8

normal at 5/5 in both the upper and lower extremities bilaterally with no evidence of atrophy; he was able to tandem gait and squat without difficulty; and he was able to walk on the heels and toes, though Dr. Darr noted occasional right leg weakness (R. at 15; 286-87.)

The ALJ took into account that in August 15, 2016, Plaintiff reported to Dr. Jaberi that he had no relapses since his last visit. (R. at 15; 358.) Plaintiff also indicated that he did not feel that there had been any change to his functional level since his last visit. (*Id*.)

The ALJ considered that when Plaintiff next saw Dr. Jaberi, about six months later in February 2017, he reported no new medical concerns. (R. at 15; 361.) The ALJ also acknowledged that Plaintiff reported continued difficulty with the right side of his body with intermittent right arm numbness. (*Id*.) Plaintiff, however, indicated he had not fallen and that he was able to complete his activities of daily living. (*Id*.) On examination during this February 2017 visit, Plaintiff's motor strength was 5/5 with normal tone, and his gait was noted to be spastic hemiplegia, right side. (R. at 15; 363.)

The ALJ recounted that in April 2017, Plaintiff presented to Jodi Gottardi, PA-C, with complaints of tiredness and left leg numbness and tingling. (R. at 15; 367.) On examination, Plaintiff had full range of motion of the left lower extremity, intact sensations, warm to touch, and capillary refill was normal. (R. at 15; 368.) He had normal motor strength in the upper and lower extremities. (*Id*.)

The ALJ discussed that Plaintiff underwent another brain MRI in August 2017 which indicated two lesions in the right periventricular white matter that were described as stable from the description on the previous MRI report from June 2016. (R. at 15; 381.) There was no focus of active demyelination seen on this MRI. (R. at 381.)

9

The ALJ noted that three weeks later, on September 14, 2017, Plaintiff was examined by Andrew Stalker, M.D., for MS. (R. at 15; 387-90.) The ALJ recognized that Plaintiff complained of intermittent numbness in his right arm and of ongoing issues with his right leg but denied any falls. (R. at 15; 387). Dr. Stalker assessed Plaintiff with MS and spastic hemiplegia affecting the right dominant side. (R. at 15; 390.) He recommended that Plaintiff continue Avonex and Baclofen while they awaited the approval for Ocrevus. (*Id.*) Plaintiff started Ocrevus infusions in October 2017. (R. at 385.) In December 2017, Plaintiff reported no exacerbations or falls. (R. at 382.) The ALJ took specific note of all of this.

The ALJ took into account that on April 9, 2018, Plaintiff reported that he was walking better and was able to go to the woods to deer hunt. (R. at 15; 393.) To this point, the ALJ recognized that Plaintiff had attempted to explain at the hearing that he only went in the woods to watch the deer. (R. at 15; 56.) The ALJ determined, however, that going into the woods, even just to watch deer, still requires the ability to walk and navigate uneven terrain for a continuous basis. (R. at 15.)

The ALJ discussed that on June 28, 2018, Plaintiff returned to Dr. Stalker, who noted that Plaintiff had received his second infusion of Ocrevus in April. (R. at 16; 413.) During this visit, Plaintiff's motor strength was 5/5 with normal tone. (R. at 413.) Dr. Stalker assessed Plaintiff's gait and station as spastic hemiplegia affecting the right dominant side. (*Id.*)

This recitation of the ALJ's discussion of Plaintiff's MS makes clear that she considered the record evidence relating to Plaintiff's treatment for MS and right-sided problems, and she evaluated the limiting nature of his MS in view of the overall record. In so doing, the ALJ amply fulfilled her obligations under the regulations. *See* 20 C.F.R. § 404.1545(a)(3) (the ALJ is responsible for assessing a claimant's RFC based on all of the relevant evidence); *see also Webb*

10

*v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (the ALJ is responsible for evaluating the medical evidence and the claimant's testimony to form an assessment of his RFC). The ALJ ultimately found that, with continued treatment, Plaintiff's functioning is not significantly limited with respect to his impairments but that he does experience right-sided symptoms. (R. at 16.) These reasonable findings are supported by substantial evidence. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical evidence useful in assessing intensity and persistence of symptoms on claimant's ability to work). The ALJ accounted for the limitations caused by Plaintiff's MS as she found supported by the evidence by restricting Plaintiff to limited range of medium work with postural limitations, restrictions on use of the right upper and lower extremities, and environmental limitation. (R. at 13-14.)

Plaintiff maintains the ALJ failed to consider the episodic nature of his condition and cites to evidence that he claims demonstrated varying symptoms, included right hemiparesis, gait issues, right-sided numbness, and spastic speech. (Pl. Brief at 11-12.) As an initial matter, the Court notes that, to the extent that Plaintiff refers to findings that the ALJ did not explicitly discuss, an ALJ is not required to consider each and every piece of evidence in the record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party.") (internal citations and quotations omitted); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006) ("Even though the ALJ did not discuss (or maybe even consider) every piece of medical evidence relevant to CFS, the evidence that she did consider was substantial."). While here, the ALJ did not discuss every medical finding to which Plaintiff refers, she clearly considered Plaintiff's treatment for MS, which included many of the

11

records to which Plaintiff refers, including records that specify right-sided difficulties and gait disturbance. (R. at 14-16.)

Plaintiff cites abnormal findings that the ALJ did not expressly discuss but fails to specify the severity of those findings or demonstrate that his condition had reached a disabling level. Nor does Plaintiff demonstrate that the abnormal findings limited him to only sedentary exertional work with occasional handling and fingering limitations on the right. (*See* Pl's Brief at pp. 10-11, 15). Of course, Plaintiff bears the ultimate burden of proof on the issue of disability. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987) (under the "settled allocation of burdens of proof in disability proceedings," the claimant must prove the extent of her impairments). The agency's regulations instruct, "[w]e need specific medical evidence to determine whether you are disabled or blind. You are responsible for providing that evidence." 20 C.F.R. § 404.1514. The Court of Appeals for the Sixth Circuit has repeatedly recognized that "[a] social security disability claimant bears the ultimate burden of proof on the issue of disability." *See, e.g., Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984). Because Plaintiff provides no explanation why the findings he cites support the level of limitation that he alleges, he has failed to meet his burden. Plaintiff has not demonstrated that greater limitations than those assigned by the ALJ were required.

Although the argument is not developed, Plaintiff seems to take issue with the ALJ's decision to give little weight to the opinions of his treating physician, Dr. Jaberi. (Pl's Brief at p. 11 ("As for Plaintiff's treating physician, the ALJ gave his multiple opinions little weight.")) To the extent Plaintiff intended to make this argument, the Court concludes that the ALJ provided good reasons for not affording controlling weight to these opinions.

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . ." 20 C.F.R. § 416.927(c)(2); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 408.2 If the treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the

---

2 "Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and purport to apply to the evaluation of opinion evidence for claims filed before March 27, 2017." *Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *5 n.2. (N.D. Ohio Feb. 21, 2019) (citing 82 Fed. Reg. 5844-5884 (Jan. 18, 2017)). Plaintiff's claim was filed before March 27, 2017, before the new regulations took effect.

> treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242). There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Substantial evidence supports the ALJ's decision not to afford controlling weight to Dr. Jaberi's opinion. For instance, in November 2015, Dr. Jaberi indicated, "I do not think that the patient can further tolerate a job with ten hours daily work for seven days per week." (R. at 269.) This statement, however, as the ALJ noted, is akin to a statement of disability, which is a matter reserved to the Commissioner. Opinions on an issue reserved for the Commissioner and not entitled to any special deference. *See* 20 C.F.R. § 404.1527(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner . . . ."); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) (treating physician's statement that a claimant is "unable to work" is an opinion on an issue reserved to the Commissioner and not entitled to any particular weight).

Further, in February 2015, Dr. Jaberi reported that Plaintiff remained at a "disability level of 2." (R. at 270, 314.) As the ALJ properly observed, this rating was based on the Kurtzke Expanded Disability Status Scale (for multiple sclerosis) and a level 2 means "minimal disability one FS ([F]unctional System)." (R. at 17.) Thus, substantial evidence supports the ALJ's conclusion that the level 2 rating does not support Plaintiff's contention that he was significantly functionally limited. Although Plaintiff insists that the ALJ discounted the opinion merely because Dr. Jaberi did not provide a function by function analysis of Plaintiff's specific abilities, the ALJ clearly went further. In any event, "medical opinions are statements from acceptable

15

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a). Dr. Jaberi's statements did not explain how Plaintiff's symptoms prevented him from working or otherwise describe what Plaintiff was able to do despite his limitations. Accordingly, the ALJ reasonably afforded Dr. Jaberi's opinions only little weight.

Plaintiff may also be faulting the ALJ's decision to afford great weight to Drs. Darr and Hallet, but again does not develop his arguments or indicate why the ALJ's assessment of those opinions was error. (*See* Pl's Brief at p. 11 (referring to Drs. Darr and Hallet).) Nevertheless, the Court concludes that the ALJ properly considered both doctors' opinions and reasonably afforded them great weight.

Substantial evidence supports the ALJ's conclusion to afford these opinions great weight. Dr. Darr examined Plaintiff in June 2016 at which point Plaintiff told Dr. Darr that he was disabled due to MS. (R. at 284.) Even so, Dr. Darr found Plaintiff had 5/5 muscle strength bilaterally in the both the upper and lower extremities with no evidence of atrophy; Plaintiff's hearing, speech, and sight were within normal limits; his communication skills were normal, as were his nutritional status and vital signs. (R. at 286-87.) Plaintiff's upper extremity functions for reaching, handling, and fine and gross movements were intact and he did not require the use of an ambulatory aid. (R. at 287.) He was able to push and pull objects and could manipulate objects. (Id.) Dr. Darr indicated that Plaintiff could operate hand and foot control devices, was able to drive a motor vehicle and travel without any difficulty, and was able to climb stairs without much difficulty. (*Id*.) Dr. Darr indicated that Plaintiff had significant symptoms of

16

weakness in the right hand that significantly improved with Avonex and Baclofen, and that Plaintiff reported that off and on he had some weakness in the right arm and right leg. (*Id.*)

Based upon his evaluation, Dr. Darr opined that Plaintiff was able to lift and carry between 30 to 40 pounds frequently and over 41 to 60 pounds occasionally. (R. at 287.) Plaintiff's activities of daily living seemed intact to Dr. Darr. (R. at 287). The ALJ concluded Dr. Darr's opinion consistent with both his objective findings and the overall record. This finding was reasonable and supported by substantial evidence. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

The ALJ also reasonably considered the opinion evidence from Dr. Hallet, the state agency reviewing physician at the initial level. (R. at 16-17; 71-81.) Dr. Hallet reviewed the evidence and opined that Plaintiff was capable of a restricted range of medium exertional work. (R. at 77.) Dr. Hallet opined that Plaintiff could frequently climb ramps/stairs, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; occasionally overhead reaching with the left upper extremity due to "AC DJD" (acromioclavicular degenerative joint disease), and had to avoid all exposure to hazards. (R at 77-78.) The ALJ found Dr. Hallet's assessment was largely reliable because, among other factors, it was based on a review of the available case record, including the Plaintiff's statements regarding his daily activities, and it was reasonable and consistent with the record as a whole. Again, these are proper bases upon which an ALJ may rely to support assigning great weight to an opinion. *See* 20 C.F.R. § 404.1527(c)(4) (consistency considered). The ALJ also properly noted and considered that state agency medical

17

consultants, such as Dr. Hallet, are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Social Security Act. *See* 20 C.F.R. § 404.1513a(b)(1) (state agency medical consultants are highly qualified and experts in Social Security disability evaluation.); *see also* SSR 17-2p ("MCs and PCs are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Act."). The ALJ reasonably afforded great weight to Dr. Hallet's opinion and the determination is supported by substantial evidence.

Even if the record included evidence that could support greater limitations imposed by Plaintiff's MS, the Court would not reach a different result. Here, the ALJ considered the record as a whole and provided a reasonable explanation, supported by substantial evidence, for evaluating the limiting effects of Plaintiff's MS. The Court will not disturb the Commissioner's decision if it is supported by substantial evidence, even if this Court would resolve the issues of fact differently, or substantial evidence also supports the opposite conclusion. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Accordingly, Plaintiff's first contention of error is **OVERRULED**.

**B. Substantial Evidence supports the ALJ's RFC Determination at Step Five**

Plaintiff argues that the ALJ erred by not relying on a hypothetical question posed to the VE which limited Plaintiff to sedentary-level work and occasional handling and fingering with the right upper extremity, which Plaintiff contends was consistent with his MS symptoms. (Pl's Brief at 13-15.) Plaintiff's argument, however, misses the mark. Plaintiff has failed to establish that the ALJ erred. To the extent Plaintiff faults her on this basis, the Court finds that the ALJ was not required to rely on the VE's testimony in response to a hypothetical question that included limitations she determined were not supported by the record evidence.

The ALJ's hypothetical question incorporated all of the limitations the ALJ found credible and supported by the evidence and, therefore, was proper. In formulating the hypothetical, an ALJ is only "required to incorporate those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

The ALJ asked the VE to consider whether an individual with Plaintiff's vocational profile and RFC for a limited range of range of medium work could perform any work in the national economy. (R. at 60-61.) The VE testified that an individual with those specified characteristics was able to perform other jobs in the national economy as a food service worker; kitchen helper; and laundry worker, all of which existed in substantial numbers nationally. (R. at 60-61.) Based on the VE's testimony, the ALJ concluded at step five that Plaintiff was capable of performing other work that existed in significant numbers in the national economy. (R. at 18-19.) The ALJ relied upon the hypothetical question to the VE that incorporated all of the limitations the ALJ found credible and supported by the evidence. The ALJ, therefore, properly relied on the VE's testimony as substantial evidence in finding that Plaintiff was capable of performing jobs found in the national economy. *See Smith v. Halter*, 307 F.3d 377, 378-79 (6th Cir. 2001) (VE's testimony in response to accurate hypothetical question constitutes substantial evidence).

Contrary to Plaintiff's contention, the ALJ was not required to rely on the VE's response to a different hypothetical question or include in her RFC assessment limitations for sedentary work with occasional right hand handling and fingering limitations, because those limitations were not supported by the record. *See Casey*, 987 F.2d at 1235 (recognizing that the ALJ is required to include only Plaintiff's supported limitations).

19

Because the vocational exert identified jobs that Plaintiff could perform despite his limitations, the ALJ reasonably concluded that Plaintiff was not disabled.  Substantial evidence supports the ALJ's step-five finding.  Plaintiff's second contention of error is **OVERRULED**.

## VI. CONCLUSION

In conclusion, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, Commissioner of Social Security's decision is **AFFIRMED** and Plaintiff's Statement of Errors is **OVERRULED**.  The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

**IT IS SO ORDERED.**


Date:  March 30, 2021                                 */s/ Elizabeth A. Preston Deavers*
                                                     ELIZABETH A. PRESTON DEAVERS
                                                     UNITED STATES MAGISTRATE JUDGE